UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET S. SUE<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-1355 (JR)<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF MARGARET SANDRA SUE

I, Margaret Sandra Sue, do hereby state under oath as follows:

1. I am an adult over the age of 18 competent to give testimony.

2. All statements contained herein are based upon my personal knowledge.

3. On April 26, 2000, I was treated by Dr. Peter J. Delenick for the first time after the April 10, 2000 automobile crash (the "Crash"). Dr. Delenick did not mention the possibility of surgery during this visit.

4. At no time did Dr. Delenick state that surgery might be required to treat my Crash-related injuries. Instead, he repeatedly assured me that I would recover from my injuries without surgery.

5. Dr. Delenick prescribed conservative treatment of my Crash-related injuries, and assured me that such treatment would result in my best recovery.

6. At no time did Dr. Edward Lang state that surgery might be required to treat my Crash-related injuries. Instead, he advised me that I showed good progress as a result of physical therapy, and that I would recover from my injuries without surgery.

**EXHIBIT 5**

7. I missed several weeks of work in the immediate aftermath of the Crash, and took time off to attend my medical appointments. I returned to work at a reduced schedule between June 20, 2000 and July 7, 2000. Subsequently, I continued to successfully work full-time in my pre-Crash capacity for IMS Health, my pre-Crash employer (and, briefly, in a similar capacity for DigitalThink, Inc.) through July 22, 2002.

8. In January of 2001, I encountered Richard A. Wirtanen, a chiropractor, at my gym. He was at the gym advertising the benefits of chiropractic treatment, and I made an appointment with him in the hope of reducing my residual Crash-related pain.

9. Dr. Wirtanen never gave me the October 11, 2001 report regarding my condition, nor did I ever see it.

10. Dr. Wirtanen never told me that my Crash-related pain and disabilities would increase dramatically, that I would become completely and permanently disabled from work, that I would require high doses of a variety of prescription drugs to treat my Crash-related pain, or that I would be almost-wholly unable to perform any normal daily tasks.

11. At no time did Dr. David W. Patterson state that surgery might be required to treat my Crash-related injuries. Dr. Patterson informed me that he expected my Crash-related injuries to improve.

12. In mid-2002, my pain level began to dramatically increase, and I began to suffer from severe, disabling weakness and numbness in my upper body, particularly my arms. The pain and numbness prevented me from lifting heavy objects, cooking, cleaning, traveling independently, participating in any athletic activities, typing on a computer for more than short periods of time, and many other normal activities which I previously took for granted.

13. The pain and numbness prevented me from performing my work duties, and I therefore ceased working on July 22, 2002. I expected my disabilities and absence from work to be brief, and therefore applied for short-term disability benefits.

14. On January 9, 2002, my Crash-related pain seemed to be under control, I was working full-time in my pre-Crash capacity earning a six-figure income, and I was caring for myself and my young daughter.

15. On January 9, 2002, I expected that my Crash-related pain and limitations would decrease in the future.

16. As of the date of this Affidavit, I am unable to lift pots or pans, prepare complete meals, walk at a normal rate, travel independently, drive long distances, or independently care for my young daughter.

17. Dr. Wirtanen never referred me to a surgeon.

18. Dr. Wirtanen never told me that I would require an anterior discectomy and fusion at C4-5, C5-6, and C6-7 to treat my Crash-related injuries.

19. Dr. Wirtanen never told me that I would require a coccygectomy to treat my Crash-related injuries.

20. Dr. Wirtanen never told me that I would require an anterior discectomy and fusion at C3-4 to treat my Crash-related injuries.

21. Dr. Wirtanen never told me that I would require a laminectomy of L4-5 to treat my Crash-related injuries.

22. March 7, 2003 – when Dr. Campbell recommended that I undergo surgery – is the first date on which <u>any</u> of physicians recommended surgery.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 5, 2006

_____
Margaret Sandra Sue

4