LEXSEE 2002 U.S. DIST. LEXIS 17950

STACEY CRAIG, Plaintiff, v. UNITED STATES OF AMERICA, Defendant.

Case No. 00 C 958

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 17950

September 20, 2002, Decided
September 23, 2002, Docketed

**DISPOSITION:** [*1] Plaintiff's motion for relief under the Federal Tort Claims Act granted in part and denied in part.

**COUNSEL:** For STACEY CRAIG, plaintiff: Bruce Matthew Bozich, Bozich and Beran, Palos Heights, IL.

For STACEY CRAIG, plaintiff: Kenneth M. Soldat, Chilton, Yambert, Porter & Coghlan, Chicago, IL.

For UNITED STATES OF AMERICA, defendant: James Peter Fieweger, United States Attorney's Office, Deborah Weis Carlson, United States Postal Service, Chicago, IL.

**JUDGES:** Wayne R. Andersen, District Judge.

**OPINIONBY:** Wayne R. Andersen

**OPINION:**

### MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of plaintiff, Stacey Craig, for relief under the Federal Tort Claims Act. For the following reasons, the motion for relief is granted in part and denied in part.

### BACKGROUND

The following factual background is taken from the pleadings and briefs submitted by the parties in this case. On July 3, 1999, plaintiff Stacey Craig was sitting in the front passenger scar of her cousin's car waiting at a red light on 94th Avenue in Orland Park, Illinois. As they waited for the light to change, a postal delivery van that had come to a stop behind them rolled forward and struck the [*2] rear of the car. The incident was characterized as a low speed impact crash which resulted in minor property damage to both vehicles involved. The car and the postal vehicle pulled into a nearby parking lot and Craig exited the car and walked around to determine whether there was any visible damage. As she was walking, she noticed for the first time a pain in her back which forced her to return to the car.

Immediately following the crash, Craig's cousin drove her to the Emergency Room at Silver Cross Hospital where Craig complained of a sore back, neck, and shoulder. After being examined by a physician at Silver Cross, Craig was diagnosed as having suffered a cervical and lumbar strain. The ER physician directed her to not return to work for two to three weeks. Craig then followed up with her primary care physician, Dr. Daniel Clark, who also diagnosed her as having suffered cervical and lumbar strains. Craig showed no progress during this three week period and, when she followed up with Dr. Clark again on July 13, 1999, he prescribed physical therapy for her. At the end of August, Dr. Clark referred Craig to a neurosurgeon due to concerns that her injury involved something more than [*3] a sprain. Craig continued with the physical therapy, but she felt no progress was being made in her recovery. On October 1, 1999, an MRI was conducted on her back and it revealed a herniated disc at C4-5 and a mild bulge disc at C6-7.

Dr. Brian Couri, a physiatrist, began treating Craig on October 15, 1999 and served as her primary doctor for the purpose of treating her back, neck, and shoulder pain. She was referred for the purpose of pursuing "conservative" treatment for her pain to which Dr. Couri prescribed physical therapy and pain medications. A myclogram was performed on October 25, 1999, which confirmed the results of the October 1 test regarding Craig's cervical spine, and it showed no herniations in her lumbar spine.

By November 24, 1999, physical therapy had alleviated some of Craig's lower back pain, but her neck and shoulder continued to bother her. Dr. Couri continued

**EXHIBIT 28**

treating Craig with a focus on her neck and shoulder pain. She eventually received steroid injections for her neck and shoulder in March 2000. While her neck responded to the injections, her shoulder pain continued unabated and she re-developed headache symptoms. Based on her response to the steroid injections, [*4] Dr. Couri concluded that problems with Craig's cervical joints may have contributed to the development of cervical facet syndrome and problems with muscles over her scapula and cervical areas continued to cause her pain. Dr. Couri also performed a nerve conduction survey in April 2000 and determined there was no evidence of nerve root damage in her cervical spine. Subsequently, Craig responded positively to physical therapy and, by April 26, 2000, Dr. Couri concluded that her cervical facet syndrome and myofacial pain were resolved. Dr. Couri continued her on a course of physical therapy with an eye toward releasing her for full duty work, which he did on May 12, 2000.

Dr. Couri next saw Craig on October 11, 2000 with complaints of increased low back and cervical scapular pain. An MRI was performed on October 13, 2000, which revealed a disc herniation at L4-5, mild bulging at S1, and a probable L5-S1 annual tear. Following the MRI, although Craig still complained of some pain in her shoulder and neck, Dr. Couri focused treatment on her lumbar spine as the main cause of her problems. Despite Dr. Couri's efforts, Craig ultimately underwent an anterior cervical diskectomy at the C4-5 level [*5] on January 2, 2002.

Craig submitted an administrative claim pursuant to the Federal Tort Claims Act to the United States Postal Service seeking $ 50,000 in damages on July 20, 1999, only seventeen days after the crash with the postal service van. At that time, Craig's claim of injuries was listed as neck, back, and shoulder injuries, with the extent of the injury to be determined. Included in the expenses she submitted was a charge for the myelogram she received on October 25, 1999. The Postal Service did not reach a final decision on Craig's claim by January 31, 2000 so the plaintiff elected to treat that inaction as a denial of her claim, and, subsequently, she filed her complaint in this action on February 16, 2000. In her complaint, Craig requested damages "in excess of FIFTY THOUSAND and 00/100 ($ 50,000) Dollars." Now, Craig has filed a motion essentially requesting that the Court permit her to amend her claim to seek damages in excess of the amount stated in her July 20, 1999 administrative claim to the Postal Service. In her reply brief on this motion, Craig has stated that she now feels $ 850,000 would be sufficient to compensate her for her injuries.

**DISCUSSION** [*6]

The Federal Tort Claims Act ("FTCA"), *28 U.S.C. § 2671 et seq.*, "effects a limited waiver of sovereign immunity for the United States," which "renders the federal government liable in tort as a private individual under like circumstances." *Midwest Knitting Mills, Inc. v. United States, 950 F.2d 1295, 1296-97 (7th Cir. 1991)*. The FTCA "incorporates the substantive law of the state where the tortious act or omission occurred ...." *Id.* at *1297*. Under Illinois law, Craig is entitled to recover damages for her injuries that were proximately caused by the collision with the Postal Service van. *See, e.g., First Springfield Bank & Trust v. Galman, 188 Ill. 2d 252, 256, 720 N.E.2d 1068, 242 Ill. Dec. 113 (1999)*.

Statutes like the FTCA in which the government waives its sovereign immunity "must be construed strictly in favor of the [government] and not enlarged ... beyond what the language requires." *United States v. Nordic Village, Inc., 503 U.S. 30, 33, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992)*. Under the FTCA, Craig was required to present her claim to the appropriate administrative agency before [*7] bringing suit. *28 U.S.C. § 2675(a)*. The law generally bars a plaintiff from pursuing an action for an amount greater than the amount stated in her administrative claim. *Id.* There are two statutory exceptions to this general rule set out in Section 2675(b). First, an increase over the amount stated in the administrative claim is permitted if there is newly discovered evidence that was not reasonably discoverable at the time the claim was presented. Second, an increase is permitted when there are intervening facts affecting the amount of the claim. The plaintiff bears the burden of showing that she falls within one of these two statutory exceptions. *See Spivey v. United States, 912 F.2d 80, 85 (4th Cir. 1990)*. If one of the exceptions applies, recovery in excess of the claim is permitted, but only to the extent that the increased amount is attributable to the newly discovered evidence or intervening facts. *See, e.g., Low v. United States, 795 F.2d 466, 471 (5th Cir. 1986); Gallimore v. United States, 530 F. Supp. 136, 139 (E.D. Pa. 1982)*.

In determining whether the exception is available, claimants will not [*8] be held to a standard that charges them with "knowing what the doctors could not tell [them]." *Fraysier v. United States, 766 F.2d 478, 481 (11th Cir. 1985)*. "Whether the plaintiff is seeking an increase under the rubric of 'newly discovered evidence' or 'intervening facts,' one of the key issues is foreseeability. If the condition was reasonably foreseeable at the time the claim is filed, an increase will not be allowed. On the other hand, if it was not ... [then] an increase may be allowed." *Milano v. United States, 92 F. Supp. 2d 769, 774 (N.D. Ill. 2000) (Pallmeyer, J.) (quoting Lowry v. United States, 958 F. Supp. 704, 711 (D. Mass 1997))*. In *Michels v. United States, 31 F.3d 686 (8th Cir. 1994)*,

the court addressed the claim of a plaintiff who had suffered injuries to his hip, knee, and ankle. These injuries carried with them an inherent possibility of arthritis or necrosis which would require future surgery. The plaintiff did not factor these considerations into his administrative claim because he did not show signs of arthritis or necrosis at that time. He later developed those symptoms and sought and obtained [*9] a significantly increased award at trial. The Eighth Circuit affirmed, stating that "a known injury can worsen in ways not reasonably discoverable by the claimant or his or her treating physician, and ... such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant § 2675(b) relief." 31 F.3d at 688.

In this case, the plaintiff has filed a motion for relief under the Federal Tort Claims Act. Our research has not revealed any motion with that exact description so we will treat her motion as one to increase her *ad damnum* claim. In its response to Craig's motion, the government has argued that the increase should be denied because the surgery that Craig eventually underwent was a foreseeable consequence of the back, neck, and shoulder pain she experienced immediately after the collision with Postal Service van. Further, the government contends that, as a matter of law, the burden was on Craig to "anticipate her worse case scenario" when she filed her administrative claim with the Postal Service. (Def. Response Brief at 10.) We disagree with both of the defendant's arguments. Indeed, we are astonished by the attempt of the Postal Service [*10] to penalize the plaintiff for making apparent modest, good faith estimates of her damages. Ironically, and perhaps justly as well, we only face this situation because of the apparent failure of the Postal Service to respond to plaintiff's modest damage claim in a timely fashion.

First, we will address the issue of the foreseeability of the back surgery Craig underwent over two years after she filed her administrative claim. In order to be able to increase her *ad damnum*, Craig must present either "newly discovered evidence not reasonably discoverable" at the time she filed her administrative claim or "intervening facts relating to the amount of the claim." 28 U.S.C. § 2675(b). At the time she filed her administrative claim on July 20, 1999, a mere seventeen days after the motor vehicle collision, the extent of the plaintiff's injuries was virtually unknown. She complained of neck, back, and shoulder pain, but there is no evidence in the record that either she or her doctors reasonably expected that she would ultimately have to have invasive surgery to alleviate her back pain.

Instead, what is clear from the record is that, at the time she submitted her [*11] claim to the Postal Service, she had been informed by her doctors that a conservative course of treatment with an emphasis on physical therapy should have been sufficient to treat her pain. In fact, when the depositions of the plaintiff and her doctors were taken on December 28, 2000 and April 24, 2001 respectively, they still felt that the conservative course of treatment was working and that back surgery would not be necessary. Consequently, we conclude that if surgery was not considered as a realistic possibility as late as April 2001, it certainly was not foreseeable when she filed her administrative claim in July 1999. As such, we view the progressive deterioration of the condition of her back as potentially an intervening fact not foreseeable at the time she filed her administrative claim.

This conclusion is supported by the holding of Judge Pallmeyer in *Milano*. In that case, the plaintiff also was involved in a motor vehicle collision with a Postal Service vehicle. When Milano filed his administrative claim with the Postal Service, he was aware that he suffered from herniated disks in his lower back. See *Milano*, 92 F. Supp. 2d at 774. In addition, he knew [*12] that his injury would require corrective surgery. However, as Judge Pallmeyer noted, it was not until after Milano filed his claim that a "build up of scar tissue" was discovered and that two additional surgeries would be required to alleviate his back pain. *Id.* Judge Pallmeyer concluded that these facts, if proven, "may constitute intervening facts not reasonably foreseeable at the time Plaintiff filed his administrative claim." *Id.* Consequently, she permitted the plaintiff to amend his *ad damnum* claim. See *id.* The facts and legal conclusion of the Court in *Milano* are almost identical to the situation we face in this case. In the case at bar, at the time when Craig filed her administrative claim with the Postal Service, she reasonably believed that her request for $ 50,000 in damages would adequately compensate her for the injuries she suffered to her neck, back, and shoulders. All of her doctors had told her that a conservative course of treatment focusing on physical therapy would help with her medical condition. However, like in *Milano*, it was not until well after the administrative claim was filed that Craig was forced to realize that an anterior cervical [*13] diskectomy would be necessary to finally alleviate her symptoms. Accordingly, at least at this point in the case, we conclude, as Judge Pallmeyer did in *Milano*, that Craig has met her burden of showing that the gradual deterioration of her back "may constitute intervening facts not reasonably foreseeable at the time [she] filed [her] administrative claim." *Id.*

Additionally, we conclude that the case cited principally by the defendant, *Lowry v. United States*, 958 F. Supp. 704 (D. Mass. 1997) is distinguishable from the case at bar. In *Lowry*, the court denied an *ad damnum* clause increase when the plaintiff claimed that "the diagnosis of the low back herniation and the establishment of the permanent nature of her disability" were either newly

discovered evidence or intervening facts. *Id. at 719.* The court noted that a medical exam performed before the plaintiff filed her administrative claim "foreshadowed [the] final diagnosis of permanent liability." *Id. at 721.* Moreover, the permanent nature of Lowry's disability was foreseeable given that she had been disabled and was collecting Social Security Disability [*14] benefits for two years before amending her administrative claim. *Id.* In contrast, there is no evidence in the record before this Court that any medical examinations or diagnoses were available to Craig prior to the filing of her administrative claim in July 1999. Further, we can discern no medical evidence accessible to Craig that would have reasonably "foreshadowed" the necessity for back surgery in the future. Finally, unlike the plaintiff in *Lowry*, Craig had only undergone conservative treatment before and after filing her administrative claim, and she had received at least some assurance that the physical therapy regime would control her symptoms without the need for surgery.

Furthermore, aside from arguing that the surgery Craig underwent was foreseeable at the time she filed her administrative claim, the defendant also argues that she should be limited to the amount stated in her original claim because she "failed to anticipate her worst case scenario when she filed and elected to stay with the amount sought in her administrative claim." (Def. Response Brief at 10.) To dispose of this argument, we again turn to Judge Pallmeyer's well-reasoned decision in *Milano*. [*15] In responding to the same "worst case scenario" argument in that case, Judge Pallmeyer stated:

> "In the Court's view, this position would require that Plaintiff inflate his claim based on events that are, although arguably foreseeable, highly unlikely. Defendant aptly notes that one of the purposes of the FTCA is allowing the government to know at all relevant times its maximum possible exposure to liability and make a realistic assessment of the settlement value of the case. Requiring that Plaintiff inflate his claim to account for the unlikely worst possible scenario places the government in no better position to realistically assess the value of the Plaintiff's claim."

*Milano, 92 F. Supp. 2d at 776.* We could not agree more. We have no intention of penalizing Craig because she decided to file promptly an administrative claim with the Postal Service a mere seventeen days after the accident occurred. For us to now conclude that Craig should have "shot for the moon" in her original claim would do a disservice not only to the Postal Service and its authority to evaluate independently tort claims but also to the general principles underlying the FTCA itself. [*16]

Therefore, we conclude that, based on the state of the record as it currently exists, the gradual increase in Craig's back pain may constitute intervening facts that were not reasonably foreseeable at the time she filed her administrative claim with the Postal Service. Accordingly, she is entitled to increase her *ad damnum* claim. However, if evidence subsequently reveals that Craig could have foreseen the need for future back surgery, then her claim for damages will be capped at the amount sought in the original administrative claim.

That having been said, our analysis in this case is not yet complete. As we mentioned above, it is settled law that, if a court determines that recovery in excess of the amount originally sought in an administrative claim is justified, the plaintiff may only recover to the extent that the increased amount is attributable to the newly discovered evidence or intervening facts. *See Low, 795 F.2d at 471; Zurba v. United States, 2001 U.S. Dist. LEXIS 24651, 99 C 3586, 2001 WL 1155285,* at *6 (N.D. Ill. Sept. 28, 2001) (Kennelly, J.). In her reply brief filed in this case, Craig has formally indicated that she requests compensation in the amount of [*17] $ 850,000. This figure is very troubling. As we discussed in the Background section above, her original July 1999 administrative claim requested $ 50,000. Now her request has increased by a factor of 17. While the applicable precedents certainly contemplate such a dramatic increase, they require that the plaintiff submit at least some evidence to substantiate it. *Herman v. United States, 2001 U.S. Dist. LEXIS 15833, 97 C 8235, 2001 WL 1175089,* at *10 (N.D. Ill. Oct. 2, 2001) (Nordberg, J.) (plaintiff provided testimony on "pain, suffering, inconvenience, and general loss of enjoyment of certain life activities she has experienced since the accident"); *Zurba, 2001 WL 1155285,* at *8 (plaintiff presented evidence of emotional and psychological distress as a result of an automotive collision); *Milano, 92 F. Supp. 2d at 775* (plaintiff offered evidence supporting his argument that his claim should be increased because the accident prevented him from returning to work as a truck driver); See, e.g., *Ekpo v. United States, 1992 U.S. Dist. LEXIS 17839, 91 C 6418, 1992 WL 346416,* at *2 (N.D. Ill. Nov. 18, 1992) (Hart, J.) (increase in recovery permitted because plaintiff demonstrated [*18] that government's actions subsequently caused severe emotional trauma because plaintiff was unable to properly grieve for her recently deceased father and brother).

In this case, Craig has provided absolutely no evidence to support her request for a very substantial increase in recovery. There is no affidavit or document attached as an exhibit to justify this increase. In fact,

Craig does not even bother to explain what additional ailment she has suffered since July 1999 that could account for this substantial sum. Her reply brief indicates that her medical bills to date amount to $ 85,263.74. (Pltf. Reply Brief at 4.) However, no additional expenses are documented. While we can speculate that the increase in recovery she seeks is due to either lost wages or some type of emotional distress, it is not the place of either this Court or the Postal Service to engage in such guesswork. The burden is squarely on the plaintiff to present evidence demonstrating why and how the requested increase is connected to the newly discovered evidence or intervening facts. Accordingly, we conclude that Craig has not met her burden of documenting the substantial increase in recovery she now seeks in [*19] her complaint. Her request to increase her *ad damnum* claim to $ 850,000 is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for relief under the Federal Tort Claims Act is granted in part and denied in part. Based on the evidence in the record in this case, we conclude that the gradual increase in back pain, despite the prescribed conservative physical therapy regime, may constitute intervening an fact which was not reasonably foreseeable when she filed her administrative claim in July 1999. Accordingly, she is entitled to increase her *ad damnum* claim. However, again based on the record, there is no evidence to substantiate the large increase she now requests. Therefore, the plaintiff is ordered to submit, with appropriate documentation, a supplemental brief describing in detail the justification for the requested increase in her *ad damnum* claim. The brief is to be filed by October 24, 2002. A status hearing is also set for October 29, 2002 at 9 a.m.

Wayne R. Andersen

United States District Court

Dated: September 20, 2002