# Bussey, Davis & Associates, Inc.

Rehabilitation Counseling • Consulting Services
Lanham, Maryland • Staunton, Virginia
9500 Annapolis Road, Suite B-6
Lanham, MD 20706-2060
(301) 459-0700
Fax (301) 459-3457

Reply to: Lanham

October 21, 2005

Peter C. Grenier, Esquire
Bode & Grenier, LLP
Ninth Floor, Connecticut Building
1150 Connecticut Avenue, NW
Washington, DC 20036

Re: Sue, Sandra M.
D/B: 04-30-54
D/I: 04-10-00

Dear Mr. Grenier,

You asked me to evaluate your client, Sandra M. Sue, for any changes in her employability and wage earning capacity that are attributable to the effects of her April 10, 2000 injuries. Ms. Sue was hurt in a motor vehicle accident on that date, and in spite of her medical care it is now clear that she is left with permanent restrictions on activity.

I evaluated Ms. Sue by following the usual and customary practices of my profession, rehabilitation counseling, which is the specialty area in counseling that deals with the interplay between disability and a person's ability to do important life activities, such as working and earning a living.

I had as background for my assessment what I understood was your full medical file on Ms. Sue's April 10, 2000 injuries, which I read for a history of her care, its outcome, her prognosis, and for medically defined statements of function preserved or lost. I also interviewed Ms. Sue for her personal, educational, and work history, and for her understanding of what are the problems she experiences on a day to day basis as a consequence of her April 10, 2000 injuries.

This information allowed me to formulate a range of hypothetical questions, which, when answered by research and analysis, allowed me to answer your questions to the court required standard of being held to a more likely than not level of professional certainty.

Ms. Sue is a 51 year old, 5'4" tall, Caucasian female who lives in McLean, VA. She has earned both a

**EXHIBIT 30**

Dr. Bussey  
Re: Ms. Sue  
Page 5

October 21, 2005

The same study identifies those who have not worked in the past year because of illness or disability as having a 'severe' work disability, a group identified for Ms. Sue's age and level of educational attainment as an estimated 242,000 persons, of whom only 5% are working full time and 82.7% are not in the labor force.

This Census data is accompanied by some cautions on its use, mostly related to the fact that the term 'disability' varies because of law and regulation, but the data is statistically sound and does not significantly vary from other studies on the issue,[2] so I believe it to be a reasonable benchmark for a measure of those who are or are not working in a segment of the population reporting health problems that affect work.

In view that it is generally accepted in my profession that the standards required to get and keep competitive work are fairly stringent, involving, for example, successfully meeting time, attendance, and production standards when compared to one's coworkers, I next analyzed the technical question of what are the elements in Ms. Sue's background that would support the view that over time she is more likely to to be in the larger age-related group of those who are employed rather than the smaller group of those who are not working and not in the labor force because of health problems that limit their capacity to work.

In spite of a number of positive factors, including a good work history and much better than average education, I concluded that the limitations on activity placed on Ms. Sue because of the residual effects of her April 10, 2000 injuries were the controlling factor. As limited, for example as described by her treating physician, Dr. Lilienfield, and by others, I concluded there was no reasonable expectation that Ms. Sue could be expected to show up at a job about as much as others, turn out about as much work and of the same quality as her coworkers, and over time not miss any more time from work than them, all of which is required to get and keep competitive employment. Consequently I concluded that it was the 'severe work disability' group, where only 5% were employed full time, which best represents Ms. Sue's status, both now and in the future.

I therefore concluded that Ms. Sue is indeed unemployable as a consequence of the effects of her April 10, 2000 injuries, and that unless her physical status changes significantly for the better, we can expect her to continue to be unemployable for the indefinite future.

---

[2] See, for example, Landmark Disability Survey Finds Persuasive Disadvantages, National Organization on Disability, http://www.nod.org/index.cfm?fuseaction=page.viewPage&pageID=1430&nodeID=1&FeatureID=1422&redirected=1&CFID=5204702&CFTOKEN=3271105, June 25, 2004, Accessed October 20, 2005.

Dr. Bussey  
Re: Ms. Sue  
Page 6

October 21, 2005

Unfortunately this is not a circumstance that lends itself to being offset by other professional services, such as vocational rehabilitation sponsored job retraining, as it is not a shortage of skills that keeps Ms. Sue from working, but rather it is that the residual effects of her April 10, 2000 injuries are so limiting to her that there is no reasonable likelihood that she can be expected to meet the standards necessary for her to get and keep competitive employment. Consequently her status of being unemployable in any meaningful sense of that term must be considered to be permanent and irreversible.

Finally, I agree with Dr. Lilienfield that Ms. Sue's situation is complex, so I reserve the right to consider any other information that may become available about her situation, and if necessary modify my findings. Consequently I ask that you continue to forward to me any other information about her as it becomes available.

That concludes my report. Thank you for referring Ms. Sue for services, and please call if you have any questions.

Sincerely,

*Phillip Bussey*

Phillip Bussey, Ph.D., CRC

enclosures