UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET S. SUE | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-1355 (JR) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION TO STRIKE BRAD SCHILLER**

Plaintiff Margaret Sandra Sue ("Ms. Sue"), through undersigned counsel, moves this Court for an Order striking the testimony of designated defense expert economist Brad Schiller, Ph.D. As discussed more fully in the accompanying memorandum of points and authorities, Dr. Schiller, designated by Defendant as (and at best, only qualified as) an economist, should be precluded from his improper attempts testify regarding the following areas that are completely outside of his expertise: medical causation, vocational disability, and Ms. Sue's future health-care needs.

Dr. Schiller's inexpert opinions regarding these specialized non-economic matters not only wholly lack any factual bases, but they also blatantly contradict the opinions of <u>Defendant's own designated medical experts</u>. Dr. Schiller's unsubstantiated layman's opinions will hinder, rather than assist, the trier of fact.

It is black letter law that an expert may only testify within his area of expertise, and that all expert testimony must be grounded in legitimate factual bases. This Court must grant this motion because:

1) The opinions set forth in Dr. Schiller's "expert" report lack <u>any</u> factual basis, and are <u>directly</u> <u>contradicted</u> by Defendant's medical experts;

2) Dr. Schiller, an economist with literally no medical expertise, improperly "opines" regarding medical causation in his "expert" report;

3) Dr. Schiller, an economist with literally no vocational disability assessment expertise, improperly "opines" regarding Ms. Sue's vocational disability in his "expert" report;

4) Dr. Schiller, an economist with no medical or life-care planning expertise, improperly "opines" regarding Ms. Sue's future health-care needs and life-care plan in his "expert" report;

5) Dr. Schiller is utterly unqualified to render expert opinion regarding medical causation, vocational disability, or life-care planning; and

6) Dr. Schiller's baseless, unqualified opinions comprise the majority, if not the whole, of his "expert" report.

Additionally, to the extent that the Court does permit such testimony, it would be duplicative in many respects of the areas in which Defendant has already designated other experts.

Plaintiff's supporting memorandum and a proposed Order are filed herewith.

Respectfully submitted,

MARGARET SANDRA SUE

By:     *Peter C. Grenier /s/*
         Peter C. Grenier (D.C. Bar No. 418570)
         Bode & Grenier, L.L.P.
         1150 Connecticut Avenue, N.W.
         Ninth Floor
         Washington, D.C.  20036
         (202) 828-4100
         (202) 828-4130 (fax)
         *Counsel for Plaintiff*

Dated: January 30, 2006

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January 2006, I served a true and accurate copy of the foregoing Plaintiff's Motion to Strike Brad Schiller, including all exhibits and attachments, by electronic case filing and U.S. Mail, postage-prepaid upon:

    Heather R. Phillips, Esquire
    Assistant United States Attorney
    Judiciary Center Building
    Civil Division
    555 4th Street, N.W., Room E-4212
    Washington, D.C. 20530
    (202) 514-7139
    (202) 514-8780 (fax)
    *Counsel for Defendant*

                                              _____*Peter C. Grenier /s/*_____
                                                        Peter C. Grenier

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET S. SUE | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-1355 (JR) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE BRAD SCHILLER

**Introduction**

In April 2000, Plaintiff Margaret Sandra Sue ("Ms. Sue") was severely and permanently injured by Defendant's employee, who, while acting within the scope of his employment, negligently drove his car into the rear of Plaintiff's car on the Roosevelt Bridge (the "Crash"). Plaintiff's special damages alone exceed $5,000,000.00.

Defendant's Rule 26(a)(2) Disclosures ("Defendant's Disclosures") state that Brad Schiller is "an economist at American University," and that he is expected to opine regarding "the proper **measuring** and **accounting** of plaintiff's future costs and damages …" Exhibit 1 at 2 (emphases added). As discussed herein, Dr. Schiller is an economist, not a medical doctor. The vast majority of his December 1, 2005 "expert" report (the "Report") consists of opinions far outside the scope of his alleged economic expertise, including medical causation, vocational disability, and Ms. Sue's future health-care needs. Four of the Report's five substantive sections address the aforementioned subjects – topics upon which Dr. Schiller is spectacularly unqualified to opine. *See* Exhibit 2.

In addition, the opinions contained in the Report are far outside the scope of Defendant's Disclosures. Worse, the opinions set forth in the Report are not based upon <u>any</u> factual foundation, and are <u>wholly contradicted by the opinions of Defendant's medical experts</u>.

Dr. Schiller, a mere economist, completely lacks the knowledge, education, certification, and experience to render the opinions contained in the Report. He is unqualified when tested against the applicable evidentiary rules and case law. His inaccurate opinions lack factual foundation, and are contradicted by Defendant's medical experts, and Plaintiff's experts alike. Because Dr. Schiller's opinions are based upon demonstrably incorrect facts and shoddy "analysis" outside his purported area of expertise, Dr. Schiller's inaccurate layman's opinions will hinder, rather than assist, the Court. Dr. Schiller's testimony regarding medical causation, vocational disability, Ms. Sue's future health-care needs, and Ms. Sue's life-care plan should therefore be stricken -- indeed, they are duplicative of the subject matters for which Defendant has otherwise already identified experts.

## I.    FACTUAL BACKGROUND

Defendant's November 22, 2005 Defendant's Disclosures identified five experts – an orthopedic surgeon[1], a neurologist[2], a neurosurgeon[3], a vocational rehabilitation consultant[4], and an economist[5]. Expert reports for all but Brad Schiller, Defendant's economist, were attached thereto.

---

[1] Joel D. Fechter, M.D.
[2] Ignacio R. Rodriguez, M.D.
[3] Arthur Kobrine, M.D.
[4] Kathy Sampeck, M.A.
[5] Brad Schiller, Ph.D.

2

Nine days later, on December 1, 2005, Defendant produced Dr. Schiller's "expert" report. The Report is almost exclusively comprised of inexpert speculation regarding medical causation, vocational disability, Ms. Sue's future health-care needs, and Ms. Sue's life-care plan.

### a. The Report's Baseless, Inexpert Speculation Regarding Medical Causation

The Report's first heading reads "Disputed Causality," something which by definition in a personal injury case falls outside the ken of an economist. Exhibit 2 at 1. Dr. Schiller incorrectly speculates that "any employment impairment Ms. Sue now suffers is <u>at best</u> only partially attributable to the accident of April 2000." *Id*. at 2 (emphasis in original). The Report alleges, based upon Dr. Schiller's (presumably economic) "analysis" of Ms. Sue's <u>medical</u> records, that "[a]vailable records indicate that Ms. Sue's pains and disabilities worsened in 2003, two and a half years after the [Crash]." *Id*. at 1. Dr. Schiller also discusses "the link between her post-accident symptoms and her pre-existing ailments (including disc surgery)."*Id*.

### b. The Report's Baseless, Inexpert Speculation Regarding Ms. Sue's Disability and Employability

Defendant's own orthopedic surgeon expert, Joel Fechter, M.D., opines that Ms. Sue is completely disabled from employment, and has a minimum of "25 to 28 percent impairment … of the whole person …". *See* Exhibit 3 at 25; *Id*. at 44. Defendant's own expert neurologist, Ignacio R. Rodriguez. M.D., opines that Ms. Sue is completely disabled from work. *See* Exhibit 4 at 14. Defendant's own expert neurosurgeon, Arthur Kobrine, M.D., opines that Ms. Sue's injuries are permanent. *See* Exhibit 5 at 65.

3

Defendant's own vocational disability expert (and a fully accredited vocational counselor), Kathy Sampeck, states that "Ms. Sue is not currently employable, and at present she has experienced a 100% loss of earning capacity." Exhibit 6 at 6.

Dr. Phillip Bussey, a fully accredited vocational counselor (and Plaintiff's expert), opines that Ms. Sue's "status of being unemployable in any meaningful sense of that term must be considered to be permanent and irreversible." *See* Exhibit 7 at 6.

On March 2, 2004, CIGNA Group Insurance determined that Ms. Sue is "totally disabled from performing any occupation." Exhibit 8.

The United States Social Security Administration states that Ms. Sue "became disabled under our rules on July 22, 2002." Exhibit 9.  Dr. Rodriguez, Defendant's expert, states that an individual's workplace disability is binary – "[t]here's no halfway mark.  You don't have five percent disability.  You're either disabled [from work] or you're not … You're either able to perform what [the Social Security Administration] calls substantial gainful activity or you're not." Exhibit 4 at 14.

In the face of overwhelming evidence to the contrary, and in contradiction of the opinions of Defendant's own expert orthopedic surgeon, neurologist, neurosurgeon, and vocational disability expert, the Report incorrectly speculates that "the extent of Ms. Sue's current and future employment impairment is also much less certain than [Plaintiff's expert] has assumed." Exhibit 2 at 2.  Shockingly, Dr. Schiller bases his reckless speculation regarding Ms. Sue's disability and employability on Dr. Kobrine's observations that Ms. Sue "was 'healthy appearing,' 'gets up easily from the chair,' and is 'able to walk on heels and toes in a normal fashion.'" Exhibit 2 at 2.  The Report ignores Dr. Kobrine's opinion that Ms. Sue's injuries are permanent. *See* Exhibit 5 at 65.

4

Stepping far outside of his area of purported expertise (economics), in the Report Dr. Schiller wrongly alleges that "one should contemplate a <u>partial</u> (not total) permanent disability … " (emphasis in original) and that Ms. Sue's "earnings impairment might not be severe." Exhibit 2 at 3.  The Report fails to state whether Dr. Schiller's speculation regarding Ms. Sue's disability and earnings impairment is to a reasonable degree of professional probability or certainty.  In addition, the Report ignores Dr. Rodriguez's opinion that Ms. Sue's employment disability is binary, and not amenable to assessment as a partial disability.

    c. **The Report's Baseless, Inexpert Speculation Regarding Ms. Sue's Future Health-Care Needs and Life-Care Plan**

Dr. Schiller admits that he "ha[s] no expertise in assessing the validity or appropriateness of health-care diagnoses proffered by plaintiff's experts." Exhibit 2 at 5.

Despite Dr. Schiller's admitted lack of expertise, the Report incorrectly speculates that Ms. Sue's life-care "projections seem excessive." *Id*. at 5-6.  Dr. Schiller, possibly as a result of his admitted lack of life-care planning expertise, further states that he finds it "difficult to construct an alternative … cost estimate for Ms. Sue's future health care needs." *Id*. at 6.  As a result, Dr. Schiller "… cannot provide a specific cost estimate for future health-care costs." *Id*.

**II.    ARGUMENT**

    a. **Legal Standards**

"The Supreme Court has assigned to trial judges the task of ensuring that the expert's testimony rests on reliable foundation and is relevant to the task at hand." *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 110 (D.D.C. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 597 (1993))(internal quotations omitted).

5

Expert testimony is admissible <u>only</u> if "sufficient facts already in evidence or disclosed by the witness as a result of his investigation … take such [expert] testimony out of the realm of guesswork and speculation." *Faries v. Atlas Truck Body Manufacturing Company*, 797 F.2d 619, 623 (8th Cir. 1986) (quoting *Polk v. Ford Motor Company*, 529 F.2d 259, 271 (8th Cir. 1976)) (citing Fed. R. Evid. 105) (internal quotations omitted). "If an expert opinion is so fundamentally unsupported that it can offer no assistance to the [fact-finder], then the testimony should not be admitted. *Loudermill v. Dow Chemical Company*, 863 F.2d 566, 570 (8th Cir. 1988). Expert testimony is inadmissible if it is no more than legal conclusions "dressed up and sanctified as the opinion of an expert." *Viterbo v. Dow Chemical Company*, 826 F.2d 420, 424 (5th Cir. 1987). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Id*.

"In order for the court to permit an expert witness to testify, it must be clear that the expert witness is qualified as an expert by knowledge, skill, experience, training, or education. ..." *Calvetti*, 346 F. Supp. 2d at 110 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion*, 345 F.3d 15, 24 (1st Cir. 2003) (internal quotations omitted). Expert testimony may be admitted only "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Calvetti*, 346 F. Supp. 2d at 110.

Federal Rule of Evidence 702 requires that an expert witness possess specialized "knowledge, skill, experience, training, or education" regarding the matter upon which the expert seeks to opine. *Id*. In addition, the expert may only opine if "(1) the testimony

6

is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

A witness qualified to provide expert testimony regarding his area of expertise may not stray from his expertise and opine as to matters outside his qualifications. *See*, *e.g.*, *Berlyn Inc. v. Gazette Newspapers, Inc.*, 73 Fed. Appx. 576, 582 (4th Cir. 2003) (holding that an expert with regard to newspaper industry practices was unqualified to offer expert testimony as an economist); *Slaven v. Mee Noodle Shop & Grill*, 1998 U.S. Dist. LEXIS 15049, 6-7 (S.D.N.Y. 1998) (holding that an expert with regard to the profitability of advertising projects was unqualified to offer expert testimony regarding the profitability of advertising agencies) (attached hereto as Exhibit 10).

All expert opinions must be to a "reasonable degree of [professional] certainty" – that is, more likely than not. *Lewis v. Washington Metropolitan Area Transit Authority*, 19 F.3d 677, 679 n2 (D.C. Cir. 1994).

### b. The Opinions Set Forth In Dr. Schiller's Report Have No Factual Basis, And His Opinions Should Therefore Be Stricken

If Defendant's own bevy of medical experts are to be believed and credited, then the Report consists of the rankest of sheer speculation and is devoid of an iota of factual basis. The Report's statements regarding the extent of Ms. Sue's disability and her vocational disability are not only without any factual foundation, but are flatly contradicted by Defendant's medical experts, and merely recite inaccurate legal conclusions, thereby mandating that they be stricken.

As set forth above, all expert testimony must be supported by "sufficient facts" which remove such testimony from "the realm of guesswork and speculation." *Faries*,

7

797 F.2d at 623.  Expert testimony is inadmissible if it is no more than legal conclusions "dressed up and sanctified as the opinion of an expert." *Viterboy*, 826 F.2d at 424.

Dr. Schiller incorrectly opines that "the extent of Ms. Sue's current and future employment impairment is also much less certain than [Plaintiff's expert] has assumed." Exhibit 2 at 2.  This statement is <u>patently</u> <u>false</u>, and serves as the primary basis for Dr. Schiller's inexpert speculation regarding Ms. Sue's vocational disability.  (As an aside, "certainty" is not the correct legal standard – Ms. Sue's current and future employment impairment must only be proven to a reasonable degree of professional probability).

Defendant's own chosen vocational counselor, Kathleen Sampeck, opines that "Ms. Sue is not currently employable, and at present[6] she has experienced a 100% loss of earning capacity." Exhibit 6 at 6.

Defendant's own chosen orthopedic expert, Joel Fechter, M.D., unequivocally states that Ms. Sue is completely disabled from employment. *See* Exhibit 3 at 25.  Dr. Fechter further states that Ms. Sue has a minimum of "25 to 28 percent impairment.  That's impairment of the whole person …") *Id*. at 44.

Defendant's own chosen neurologist expert, Ignacio R. Rodriguez. M.D., opines that Ms. Sue is completely disabled from work and suffers from a permanent impairment. *See* Exhibit 4 at 14 (stating that Ms. Sue is "unable to perform any type of work…" and that she is "completely disabled from being able to do anything …").

Shockingly, the Report incorrectly suggests that Arthur Kobrine, M.D., Defendant's expert, is of the opinion that Ms. Sue may work again merely because she is "healthy appearing" and is "able to walk on heels and toes in a normal fashion." Exhibit 2

---

[6] Ms. Sampeck's report is dated November 22, 2005.

8

at 2. In fact, Dr. Kobrine opines, in sworn deposition testimony, that Ms. Sue's injuries are permanent. *See* Exhibit 5 at 65.

<u>All</u> <u>qualified</u> <u>experts</u>, regardless of whether designated by Plaintiff or Defendant, disagree with Dr. Schiller, and opine that Ms. Sue is fully and permanently disabled from work. In addition to Defendant's experts, Ms. Sue has been assessed as completely and permanently disabled by Dr. Phillip Bussey (Plaintiff's expert), CIGNA Group Insurance, and the United States Social Security Administration. *See* Exhibit 7 at 6 (opining that Ms. Sue's "status of being unemployable in any meaningful sense of that term must be considered to be permanent and irreversible."); Exhibit 8; Exhibit 9. Therefore, economist Dr. Schiller's opinions regarding Ms. Sue's disability and employability should be stricken.

Dr. Schiller's inexpert guesswork regarding Ms. Sue's disability and employability lacks a factual basis, is plainly and completely contradicted by Defendant's qualified experts, and does a complete disservice to the very foundational framework for the allowance of expert testimony in civil actions. The Report's <u>three</u> <u>sentence</u> speculation regarding Ms. Sue's "Loss Range" is similarly baseless, and likewise contradicted by Defendant's medical expert. The Report illogically and incorrectly computes Ms. Sue's income loss based upon the <u>percentage</u> of her alleged "permanent partial disability." Exhibit 2 at 4. The Report cites no authority for its incredible and improper attempt to limit Ms. Sue's recovery for her permanent and complete disability from work. Defendant's expert, Dr. Rodriguez, contradicts the Report, and correctly states that an individual's workplace disability is binary – "[t]here's no halfway mark. You don't have five percent disability. You're either disabled [from work] or you're not

9

… You're either able to perform what they call substantial gainful activity or you're not." Exhibit 4 at 14.

Dr. Schiller's unsupported proposition that the amount of Ms. Sue's lost income should be somehow computed based upon her degree of impairment is simply illogical. Ms. Sue was gainfully employed prior to the Crash. Ms. Sue's Crash-related injuries disabled her from all employment. Therefore, she is entitled to recover 100% of her lost income. It is irrelevant whether she is disabled from work due to a 15% disability, or disabled from work due to a 75% disability. She is disabled from work, period -- it is nonsensical to suggest some sort of sliding scale of earnings capacity loss based upon percentage of whole body impairment.

Moreover, Dr. Schiller's factually baseless speculation regarding Ms. Sue's disability and employability is directly contradicted by Defendant's experts, and cannot possibly assist the finder of fact. Similarly, the Report's factually baseless speculation regarding Ms. Sue's "Loss Range" is directly contradicted by Dr. Rodriguez (Defendant's expert), and will not assist the finder of fact. Dr. Schiller's opinions regarding Ms. Sue's disability, employability, and "Loss Range" are merely legal conclusions dressed up and sanctified as the opinion of an expert – they should therefore be stricken.

      **c. Dr. Schiller Is Unqualified To Opine Regarding Medical Causation, And His Opinions Should Therefore Be Stricken**

Only medical doctors may opine regarding medical causation. *See*, *e.g.*, *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 198 (4th Cir. 2001) (holding "Dr. Alexander is an expert in the field of biomedical engineering. He is not a medical doctor. For this reason, Dr. Alexander was found unqualified in the multidistrict litigation to opine as to

causation in any individual plaintiff or to testify outside the area of orthopedic bioengineering."). Purported "expert" testimony should be stricken if it merely "offers a legal conclusion based upon the facts as characterized by [a party], and does not further develop the factual record …" *Spears v. Nationwide Mutual Insurance Company*, 254 F. Supp. 2d 144, 151 (D.D.C. 2003).

Brad Schiller is not a medical doctor, and nothing in his *curriculum vitae* even suggests that he has ever set foot in a medical school. *See* Exhibit 11 at 1. Dr. Schiller's "Dr." appellation derives from his Ph.D. in Economics from Harvard University. *Id*. Dr. Schiller's *curriculum vitae* lacks a single reference to knowledge, skill, experience, training, or education regarding medical causation or the practice of medicine. *See*, *generally*, *Id*.

The Report is rife with opinions regarding medical causation. The Report's first heading reads "Disputed Causality." Exhibit 2 at 1. Dr. Schiller opines that "any employment impairment Ms. Sue now suffers is <u>at best</u> only partially[7] attributable to the accident of April 2000." *Id*. at 2 (emphasis in original). Like the stricken testimony in *Spears*, the Report merely offers legal conclusions based upon the facts as characterized by Defendant, and does not further develop the factual record. Dr. Schiller's testimony should be similarly stricken.

Dr. Schiller is wholly unqualified to opine regarding medical causation. Dr. Schiller has no knowledge regarding the assessment of medical causation. He has no skill regarding the assessment of medical causation. He lacks <u>any</u> experience regarding the assessment of medical causation. Dr. Schiller has no training or experience regarding

---

[7] Indeed, Dr. Schiller does not even know that Plaintiff is fully entitled to recover all of her damages if the Crash was <u>a</u> proximate cause, concurrently with any pre-existing condition. Thus, his gross misstatements of the law certainly do not assist the trier of fact.

11

the assessment of medical causation.  Given this total lack of medical expertise, it beggars imagination to contemplate what economic expertise forms the basis of Dr. Schiller's "opinion" regarding medical causation.

As noted above, biomedical engineers are unqualified to opine regarding medical causation. *See Cooper*, 259 F.3d at 198.  Dr. Schiller's economic expertise is less closely related to medical causation than the (legally inadequate) expertise of a biomedical engineer.  Clearly, Dr. Schiller is unqualified to opine regarding medical causation.  Dr. Schiller's uninformed opinion will not assist the finder of fact.  Therefore, Dr. Schiller's opinions regarding the causal relationship between the Crash and Ms. Sue's injuries should be stricken.

### d.  Dr. Schiller's Testimony Regarding Causation Is Duplicative, And His Opinions Should Therefore Be Stricken

Expert testimony is excluded if it is simply duplicative of other expert testimony proffered in the same matter.  *See Bell v. Gonzales*, 2005 U.S. Dist. LEXIS 37879 at 47 (D.D.C. 2005) (attached hereto as Exhibit 12).

Even if, for reasons unimaginable to Plaintiff, the Court finds that Dr. Schiller is qualified to testify regarding medical causation, his testimony is duplicative and cumulative.  Other defense experts, with medical backgrounds, have been named to opine that the Crash is not the exclusive cause of Ms. Sue's present injuries. *See* Exhibit 13 at 4; Exhibit 14 at 6; Exhibit 15 at 6.  Dr. Schiller merely parrots these opinions, and fails to provide additional testimony which would assist the finder of fact in this matter.  Dr. Schiller's opinions regarding the causal relationship between the Crash and Ms. Sue's injuries should therefore be stricken.

### e. Dr. Schiller Is Unqualified To Opine Regarding Ms. Sue's Disability Or Employability, And His Opinions Should Therefore Be Stricken

As set forth above, testimony outside an expert's realm of expertise must be stricken. A witness qualified to provide expert testimony regarding his area of expertise may not stray from his expertise and opine as to matters outside his qualifications. *See Berlyn Inc.*, 73 Fed. Appx. at 582; *Slaven*, 1998 U.S. Dist. LEXIS 15049, at 6-7.

Dr. Schiller is neither a medical doctor nor a vocational expert. *See* Exhibit 11 at 1. Dr. Schiller's *curriculum vitae* fails to cite any knowledge, skill, experience, training, or education regarding the practice of medicine. *See*, *generally*, *Id.* Similarly, Dr. Schiller's *curriculum vitae* fails to cite any knowledge, skill, experience, training, or education regarding the assessment of vocational disability or employability. Unlike Dr. Phillip Bussey (Plaintiff's expert) and Kathleen Sampeck (Defendant's expert), Dr. Schiller is not a Certified Rehabilitation Counselor. The Certified Rehabilitation Counselor Certification, which Dr. Schiller lacks, is the standard certification for vocational evaluation. *See* Exhibit 16 at 1-2.

The Report contains multiple uninformed opinions regarding Ms. Sue's disability and employability. The Report's second heading reads "Extent of Disability." Exhibit 2 at 2. Dr. Schiller incorrectly opines that "the extent of Ms. Sue's current and future employment impairment is also much less certain than [Plaintiff's expert] has assumed." *Id*. at 3. This statement is completely false. As set forth in Section II(b) above, Defendant's own experts opine that Ms. Sue is completely disabled from work. Indeed, given that Dr. Schiller's report was completed more than a week after all the other defense expert reports were filed, it is mind-boggling that he makes these ridiculous

13

statements that are so demonstrably at odds with the statements of Defendant's medical experts.

Dr. Schiller is wholly unqualified to opine regarding Ms. Sue's disability and employability. Dr. Schiller has no knowledge regarding the assessment of disability and employability. He has no skill regarding the assessment of disability and employability. He lacks <u>any</u> experience regarding the assessment of disability and employability. Dr. Schiller has no training or experience regarding the assessment of disability and employability. Dr. Schiller's economic expertise is simply insufficient regarding the assessment of disability and employability. Dr. Schiller's opinions regarding Ms. Sue's disability and employability should therefore be stricken.

### f. Dr. Schiller Is Not Qualified to Testify Regarding Ms. Sue's Future Health-Care Needs Or Life-Care Plan

Dr. Schiller admits that he "ha[s] no expertise in assessing the validity or appropriateness of health-care diagnoses proffered by plaintiff's experts." Exhibit 2 at 5. Undeterred by his utter ignorance of the highly technical field of medical diagnosis, Dr. Schiller opines at length in the Report regarding Ms. Sue's prognosis. Equally undeterred by his complete lack of expertise regarding the specialized field of life-care planning, Dr. Schiller opines at length regarding specific elements of the life-care plan prepared by Donna Flannery. Ms. Flannery, who is an extremely qualified and experienced life-care planning expert, bases much of Ms. Sue's life-care plan on the opinions of Ms. Sue's own treating medical doctors. Such medical opinions are an integral component of the life-care planning process, and Dr. Schiller cites no medical opinion or authority in support of his speculation regarding Ms. Sue's future health-care

14

needs.  Ms. Sue's future health-care needs and life-care plan are outside of Dr. Schiller's expertise.

Dr. Schiller is neither a medical doctor nor a expert life-car planner. *See* Exhibit 11 at 1.  Dr. Schiller's *curriculum vitae* lacks a single reference to knowledge, skill, experience, training, or education regarding life-care planning or the practice of medicine. *See*, *generally*, *Id.*  Dr. Schiller is not a Certified Life Care Planner, Certified Case Manager, Certified Disability Management Specialist, Certified Counselor, or Certified Rehabilitation Counselor. *See Id*.  These certifications are usually held by expert life-care planners. *See* Exhibit 17 at 1-2.  Dr. Schiller's complete lack of life-care planning credentials corresponds to his total lack of life-care planning expertise.

The Report contains Dr. Schiller's layman's speculation regarding Ms. Sue's life-care plan and future health care needs.  Entirely without basis, the Report states that Ms. Sue's life-care "projections seem excessive." Exhibit 2 at 5-6.  Yet, the Report states that Dr. Schiller "ha[s] no expertise in assessing the validity or appropriateness of health-care diagnoses proffered by plaintiff's experts." *Id*. at 5.  Given Dr. Schiller's admitted ignorance of medical diagnoses and life-care planning, it is no surprise that he "cannot provide a specific cost estimate for future health-care costs."  Dr. Schiller's opinions regarding Ms. Sue's future health care needs and life-care planning should be stricken on the basis of his admitted lack of expertise.

In addition, Dr. Schiller is objectively unqualified to opine regarding life-care planning.  Dr. Schiller has no knowledge regarding life-care planning.  He has no skill regarding life-care planning.  He lacks <u>any</u> experience regarding life-care planning.  Dr. Schiller has no training or experience regarding life-care planning.  Given this total lack

15

of medical and life-care planning expertise, Dr. Schiller is unable to form a legitimate basis for the Report's "opinions" regarding Ms. Sue's future health-care needs and life-care plan.

Dr. Schiller is uncredentialed, self-admittedly inexpert, and objectively unqualified to opine regarding Ms. Sue's future health-care needs and life-care plan. Dr. Schiller's uninformed opinion will not assist the finder of fact. Therefore, Dr. Schiller's opinions regarding Ms. Sue's future health-care needs and life-care plan should be stricken.

### III.   CONCLUSION

As a result of the foregoing, Plaintiff's Motion to Strike Brad Schiller should be granted, and Dr. Schiller's testimony regarding medical causation, Ms. Sue's disability and employability, Ms. Sue's "Loss Range," Ms. Sue's life-care plan, and Ms. Sue's future health-care needs should be stricken.

>   Respectfully submitted,
>
>   MARGARET SANDRA SUE
>
>   By:   *Peter C. Grenier /s/*
>   Peter C. Grenier (D.C. Bar No. 418570)
>   Bode & Grenier, L.L.P.
>   1150 Connecticut Avenue, N.W.
>   Ninth Floor
>   Washington, D.C.  20036
>   (202) 828-4100
>   (202) 828-4130 (fax)
>   *Counsel for Plaintiff*

Dated: January 30, 2006

16

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January 2006, I served a true and accurate copy of MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE BRAD SCHILLER, as well as all exhibits and attachments, by electronic case filing and U.S. Mail, postage-prepaid upon:

    Heather R. Phillips, Esquire
    Assistant United States Attorney
    Judiciary Center Building
    Civil Division
    555 4th Street, N.W., Room E-4212
    Washington, D.C. 20530
    (202) 514-7139
    (202) 514-8780 (fax)
    *Counsel for Defendant*

                        _____*Peter C. Grenier /s/*_____
                                    Peter C. Grenier