# CAPITAL CASE MANAGEMENT, INC.

Kathleen F. Sampeck, MA, CRC, CCM, CLCP
2121 Eisenhower Avenue, Suite 200, Alexandria, Virginia 22314
Post Office Box 2920, Stafford, Virginia 22555-2920
Telephone: 703-551-4123   Fax: 540-720-8833

November 22, 2005

Heather Phillips, Esquire
Judiciary Center
555 Fourth Street, N.W.
Washington, D.C. 20530

Re: Margaret Sue

At your request I have completed a rehabilitation assessment regarding Ms. Margaret Sue. The purpose of this assessment is to render opinions regarding her future care needs as well as her future employment and earning capacity. I interviewed Ms. Sue in her home on 11/2/05, with her attorney present. I also reviewed the records and file materials provided by you office. This letter will serve as a summary of my opinions in this matter.

## GENERAL BACKGROUND

Since Ms. Sue's medical history is well documented in the file, and is summarized several times by various experts in this matter, I will not repeat the details in this report. Briefly, she is a 51-year-old woman (DOB 4/30/54) who resides with her partner and 10-year-old daughter in McLean, Virginia. She was involved in a motor vehicle accident on 4/10/00, injuring her back and neck. She had a history of low back impairment and surgery in the early 1990's. Since then she has had several surgeries, including a C-3 to C-7 fusion. She complained of neck, back, head, shoulder, ear, and upper extremity pain.

Ms. Sue has a Bachelor's Degree in Biological Sciences from the University of Maryland (1976), and a Masters Degree in Information technology from George Washington University (1996). She reported that she was an excellent student. She was last employed as a Sales Manager for IMS Health, where she managed government contracts for sales of pharmaceutical and medical supply databases. She said she worked for approximately two years after her accident because her employer was flexible and permitted her to do some of her work from home. Ms. Sue indicated that in early 2002 she experienced an exacerbation of symptoms, and she had difficulty traveling for her job because she had to carry her suitcase, laptop and presentation supplies. Medical records

Margaret Sue
November 22, 2005
Page 2 of 6

indicate that she was caring for her elderly mother at that time, and over-used her thoraco-lumbar spine performing care-giving tasks. In any event, she stopped working, and has remained unemployed since that time. According to Ms. Sue, her base salary was $87,000 annually, and she also received bonuses. Ms. Sue's previous employment experience also includes selling optical imaging equipment and pharmaceuticals. She was a District manager for Frito Lay for approximately 11 years.

## EMPLOYMENT AND EARNING CAPACITY

Based upon my interview of Ms. Sue and review of her records, it is my opinion that she is not employable at this time. For the present, she has sustained a 100% loss of earning capacity. However, she may be capable of performing some type of non-arduous work activity in the future (depending on her response to treatment).

## FUTURE CARE NEEDS

I have reviewed the Life Care Plan prepared by Ms. Donna Flannery as well as the report of Mr. John Bilotta, an environmental accessibility contractor, and would offer the following observations and suggestions.

**Projected Evaluations**: I concur with annual physical therapy evaluations, and find that the projected cost is within reason. I find the recommendation for a nutritional evaluation to be performed by a registered dietician every 3-5 years to be unusual, although according to Ms. Flannery it was suggested by Dr. Lilienfield. While a one-time nutritional evaluation may be appropriate, Ms. Sue will otherwise be well monitored by several healthcare providers who can address potential weight loss problems if they occur. The projected cost for this item appears to be reasonable. The psychiatric evaluation which took place in 2005 appears to have been appropriate as well.

I would suggest that an annual Occupational Therapy Evaluation be included under this section, to make recommendations for assistive devices, rehabilitation technologies, etc. The cost for this service would be consistent with that of a Physical therapy Evaluation.

Projected Therapeutic Modalities: Although the need for periodic physical therapy is to be expected, 24 to 32 sessions per year through life expectancy would be, in my experience, highly unusual. The cost for this service, however, appears to be within reason.

With regard to health club membership, while I agree that a water exercise program is appropriate, it should be noted that Fairfax County has excellent recreation facilities with ramped pools and hot tubs, at a nominal cost for residents. They also offer more than 35 different therapeutic recreation programs for residents with disabilities.

Massage therapy has been helpful for Ms. Sue, and I have no disagreement with the continuation of this service, however, twice weekly visits for the remainder of Ms. Sue's

2

Margaret Sue
November 22, 2005
Page 3 of 6

life appears to be highly unusual and excessive. Having spoken with several massage therapists in the Northern Virginia area, it is not unusual for someone with an acute injury to be seen weekly initially. However, most individuals are maintained with follow up visits every 4-6 weeks. The projected cost for this service is within reason, although at the high end of the range ($65-80 per visit).

Occupational therapy visits, 4-6 times per year, is a highly unusual recommendation. While I agree that Ms. Sue would benefit from receiving information and recommendations for adaptive devices and technologies to facilitate independent living, this could be accomplished with an annual OT evaluation.

Nutrition Therapy, 4-6 times per year through life expectancy, is a highly unusual recommendation which appears to be excessive. As previously noted, Ms. Sue will be monitored by several health care providers who can assist her should she experience weight problems. This service might be better addressed as a potential complication, with no cost assigned.

Psychotherapy has been recommended by Dr. Trachman and appears to be appropriate. However, Dr. Trachman advised weekly visits, and at a rate of $150 per hour, the annual expense would be $7,800 (for a period of 3-5 years). The duration for this treatment (3-5 years) is, in my experience, unusually long. Also, the projected cost of $150 per hour is at the high end of the reasonable range ($110-150).

### Future Routine Medical Care

I concur with the recommendations for routine neurosurgical follow up and pain management, and as well as the projected costs. Botox injections have been recommended for 2-5 years, and there should be no projected costs beyond that time frame. The possibility that Ms. Sue may require additional botox injections should be listed as a potential service, and no cost should be assigned, since Dr. Meleka indicated that additional treatments are a possibility and not likelihood.

### Medications

All of the medications listed in the Life Care Plan have been prescribed or recommended by Ms. Sue's physicians. It should be noted that, while she will clearly require future medications, these will likely change over time. Furthermore, in most cases, there is an attempt to reduce narcotic medication as much as possible.

In researching the projected cost for Ms. Sue's medications, I found the following:

| | |
|---|---|
| Avinza | $355.99 per 30 (compared to $370.20) |
| Celebrex | $79.33 per 30 (compared to $113.30) |
| Cymbalta | $148.05 per 45 (compared to $198.99) |
| Desoximetasone | $24 per tube (compared to $31.78) |

3

Margaret Sue
November 22, 2005
Page 4 of 6

| | |
|---|---|
| Gabapentin | $226.62 per 360 (compared to $337.50 per 270) |
| Lidocaine | no difference |
| Lidoderm | $160.03 per 30 patches (compared to $220.20) |
| Lorazepam | $28.21 per 60 tabs (compared to $37.80) |
| Methylin (generic) | $11.40 per 30 tabs (compared to $24.60) |
| Oxycodone | no difference |
| Skelaxin | $233.42 per 90 tablets (compared to $298.80) |

**Supplies**

| | |
|---|---|
| KY Jelly | $4.44 per 4 oz. (compared to $4.87) |
| Laxative | $3.50-11.00 per 50 capsules (compared to $14.99) |
| Colace | $22.20 per 60 capsules (compared to $24.74) |

**Lab/Diagnostics**

I concur with the services and costs in the Life Care Plan, with the exceptions of Facet Nerve Blocks and Lumbar Discogram. These are noted as a "potential" procedures, thus they should be listed under potential complications, with no cost assigned. Also, in light of her pre-existing lumbar spine impairment, Ms. Sue may have required lumbar spine x-rays and MRI's regardless of this accident.

**Medical Equipment and Adaptive Aids**

For the most part, I concur with the recommendations in this section of the life care plan. However, given that Ms. Sue will be utilizing a local fitness center or recreation facility, the suggested exercise equipment may be available to her at no cost.

**Wheelchair/Mobility**

I agree with the recommendation for a straight cane, and its projected cost. However, I am not aware of any medical records suggesting, within a reasonable degree of medical certainty, that Ms. Sue will require a wheelchair in the future. This would be better addressed as a potential complication, with no cost assigned.

**Orthotics/Prosthetics**

While I agree with the items included in this section, as well as their projected costs, it should be noted that given her pre-existing back impairment Ms. Sue may have required them even absent this accident.

4

### Aids for Independent Function

I concur with this item and projected cost. In addition, I would add the purchase of a hydraulic computer stand ($500-600) to accommodate a sit-stand option, and pedestals for the front-load washer and dryer ($100 each).

### Sleeping/Positioning

I concur with these recommendations and projected costs.

### Transportation

I concur with the transportation allowance for physician appointments exceeding 30 minutes travel. However, the projected cost does not break down actual mileage charges. These should comport with federal government standards.

Additionally, the cost of $10,400 annually for transportation to recreational events is grossly excessive, and should not be included in this Life Care Plan.

### Home Modifications

With regard to home modifications, I would make the following observations. Medical records do not suggest, as more likely than not, that Ms. Sue will become wheelchair dependant in the future. Therefore, no cost should be assigned for making her home wheelchair accessible.

I do concur with some of the recommendations for making Ms. Sue's home more accessible at this time. The stair chairs, while not required (since she is able to navigate the stairs) would make life easier for her. Likewise, grab bars are appropriate safety features. The projected costs for these items are reasonable. I question the inclusion of modifications in the kitchen, since Ms. Sue indicated that she cannot lift pots and pans, and since the Life Care Plan calls for an assistant to help with meal preparation. I also disagree with the recommendation to replace the toilet, since a raised commode seat ($90-100) would accomplish the same purpose. Likewise, a fold-up shower seat does not need to be installed, since a shower bench can be purchased and placed in the shower ($150-200). I concur with the recommendation for a hand-held showerhead, however, the cost is excessive, as this item can be purchased for less than $100 (compared to $165). Ms. Sue does not need a built-in closet system, but rather she should exchange closets with her partner, since the larger closet is walk-in and has lower shelving and hanging bars. An intercom system is not necessary, as inexpensive monitors can be used on each level at a cost less than $350. I fail to see the necessity of hiring a construction manager or assigning a cost for procuring a manager.

5

Margaret Sue
November 22, 2005
Page 6 of 6

## Home Care

Ms. Sue requires housekeeping assistance, however 18 hours per week is excessive. I would suggest 8 hours per week with a personal assistant, at $10-12 per hour (as opposed to 18 hours per week at $16.70 per hour. Ms. Sue does not require a certified nursing assistant (implied by the types of agencies contacted by Ms. Flannery).

Also, since there is nothing to suggest that, more likely than not, Ms. Sue will be come non-ambulatory or require assistance with all ADL's, the cost for a live-in home health aide should not be include in this plan, but rather listed as a potential complication. It should be noted that the cost of $184 per day for a live-in attendant is excessive.

## Surgical Intervention/Aggressive Treatment Plan

I concur with the recommendation and projected costs of Botox and Trigger Point Injections. However, Occipital Blocks, Occipital Stimulator, and Denervation Ablation should be listed under potential complications, with no cost assigned.

## CONCLUSION

Ms. Sue is not currently employable, and at present she has experienced a 100% loss of earning capacity. It is difficult to determine with certainty what her employment capacity will be in the future. She will clearly require future treatments, therapies and services in the future, however, I disagree with some of the recommendations and costs projected in the Life Care Plan prepared by Ms. Flannery. My observations and recommendations are outlined in this report.

The opinions I have expressed are within a reasonable degree of professional certainty in the fields of vocational rehabilitation and life care planning. They are based upon the information available to date. I reserve the right to change my opinions and amend this report if additional information is provided. Please feel free to contact me if you have any further questions.

Respectfully Submitted,

*[signature]*

Kathleen F. Sampeck, CRC, CRP, CCM, CLCP
Vocational Rehabilitation Consultant and Life Care Planner

6