LEXSEE 1998 U.S. DIST. LEXIS 15049

JOHN J. SLAVEN, Plaintiff, -v.- MEE NOODLE SHOP & GRILL, INC., ABC Co's 1-3, "John Does 1-3" (names being fictitious), ALAN H. GOLDEN and LUISA LITTLE, as Co-Executors of the Estate of Sol Goldman, DEF Co's 1-3 and "Manny Moes 1-3" (names being fictitious), THE CITY OF NEW YORK and ST. CLAIRE'S HOSPITAL AND MEDICAL CENTER, Defendants.

96 Civ. 0374 (JSM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1998 U.S. Dist. LEXIS 15049*

September 24, 1998, Decided
September 24, 1998, Filed

**COUNSEL:** [*1] For plaintiff: Gerard C. Fallon, Esq., Sonageri & Fallon, Hackensack, New Jersey.

For defendants: Radovan I. Pavelic, Esq., Pavelic & Levites, P.C., New York, New York.

For defendants: Martin B. Adams, Esq., Kopff, Nardelli & Dops LLP, New York, New York.

For defendants: Edward O' Gorman, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, New York, New York.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINIONBY:** JOHN S. MARTIN, JR.

**OPINION:**

### MEMORANDUM OPINION AND ORDER

JOHN S. MARTIN, Jr., District Judge:

Plaintiff John J. Slaven suffered a fall on the sidewalk in front of defendant Mee Noodle Shop & Grill, Inc. ("Mee Noodle") on August 1, 1994. This case arises from that accident. Presently before the Court are five motions: (1) a motion for summary judgment filed by defendants Mee Noodle and Chaj Corp. ("Mee Noodle Motion I"); (2) a motion in limine filed by defendants Mee Noodle Shop and Chaj Corp. ("Chaj") for an order to exclude the testimony of plaintiff's purported expert witness ("Mee Noodle Motion II"); (3) a motion for summary judgment filed by defendants Alan H. Goldman, s/h/a/ Alan H. Golden and Louisa Little, s/h/a/ Luisa Little ("Goldman Motion"); (4) a motion for [*2] summary judgement filed by defendant St. Clare's Hospital and Health Center ("St. Clare's Hospital Motion"); (5) a motion by Mr. Slaven for an order permitting him to supplement the January 9, 1998 memorandum filed in opposition to the motion by St. Clare's Hospital and Health Center ("Slaven Motion"). For the reasons set forth below, (1) Mee Noodle Motion I is denied, (2) Mee Noodle Motion II is granted, (3) Goldman Motion is granted in part and denied in part, (4) St. Clare's Hospital Motion is granted, and (5) Slaven Motion is granted.

### 1. Mee Noodle Motion I

Mr. Slaven alleges that he slipped and fell on a soapy substance on the sidewalk in front of Mee Noodle and that it was an employee of Mee Noodle who negligently covered that side walk with that substance, creating a dangerous condition. He claims that he suffered at least five million dollars in damages as a result of the fall. Defendants Mee Noodle and Chaj move for summary judgment on the grounds that (1) plaintiff has failed to meet burden of proof as to his damage claim based on the Volkswagen account; (2) plaintiff's damage claims based on the Volkswagen claim and cost management claim is too speculative; and [*3] (3) plaintiff has failed to plead and sustain his burden of proof as to the diversity jurisdictional amount. The motion is denied.

Mr. Slaven claims that he missed business opportunities in advertising and advertising production cost management consulting. Specifically, he swears that his company lost an opportunity to service a one-hundred million dollar per year advertising account of Volkswagen of America, Inc. ("Volkswagen") and to earn $150,000 per year in advertising production cost management consulting. Although defendants provided evi-

dence rasing a serious question as to the accuracy and credibility of Mr. Slaven's assertions regarding both the Volkswagen account and the cost management consulting business, the Court is not to "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Mattivi v. South African Marine Corp., Huguenot*, 618 F.2d 163, 167 (2d Cir. 1980). The veracity of Mr. Slaven's testimony on these issues is a "straight credibility issue for the jury." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992). Thus, there are material issues of fact regarding [*4] Mr. Slaven's damage claims based on missed business opportunities in advertising and advertising production cost management consulting, and the defendants' motion based on these grounds is denied.

The defendants' motion for summary judgment for failure to meet the statutory jurisdictional amount is also denied.

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). "The amount in controversy is determined at the time the action is commenced." Id. (citation omitted). It is well settled that the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *Chase Manhattan Bank, N.A. v. American Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070-71 (2d Cir. 1996). It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938) (emphasis added and footnotes omitted). [*5] "The legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." *Tongkook*, 14 F.3d at 785-86 (quotation omitted).

Here, although defendants presented evidence casting serious doubt as to the extent of Mr. Slaven's damages, they have not shown that it is legally impossible for him to meet the $ 75,000 jurisdictional amount. While the jury may very well reject most of Mr. Slaven's damage claims, the complaint cannot be dismissed for failure to meet the statutory jurisdictional amount.

Accordingly, Mee Noodle Motion I is denied.

**2. Mee Noodle Motion II**

Defendants Mee Noodle and Chaj filed a motion in limine for an order to exclude as unqualified the testimony of Mr. Slaven's purported expert witness, Daniel Kaye. The motion is granted.

Testimony of experts is proper where it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Evid. 702*. A trial court has broad discretion to admit or exclude expert testimony under the test of helpfulness, [*6] or after evaluating the expert's qualification. *United States v. Aminy*, 15 F.3d 258, 261 (2d Cir. 1994).

Defendants argue that Mr. Kaye is not qualified to testify as an expert witness on issues concerning profitability of two separate lines of business: (1) an advertising agency which Mr. Slaven claims would have obtained the Volkswagen account, and (2) a production cost management business that Mr. Slaven claims he would have gone into with one Donald O'Mara but for his accident.

To testify as an expert, a witness must qualify as an expert "by knowledge, skill, experience, training, or education." *Fed. R. Evid. 702*. In this case, Mr. Kaye is totally without any qualifications to testify as an expert on the operations of an advertising agency. He has neither a formal education nor a specific degree in advertising, accounting, or economics. Instead, Mr. Slaven contends that Mr. Kaye qualifies as an expert on the basis of his involvement in the advertising production cost management consulting industry since 1985. While such experience is no doubt helpful in determining profitability of a particular advertising project, it is not sufficient to overcome Mr. Kaye's apparent lack [*7] of expertise in the area of accounting or financial projections relating to the overall operation of an advertising agency.

Moreover, the proposed testimony is devoid of reasoning or methodology to justify profitability projections made, further illustrating Mr. Kaye's lack of necessary expertise in the area of accounting and finance. Thus, Mr. Kaye is unqualified as an expert concerning the advertising agency component of Mr. Slaven's claimed damages.

While Mr. Kaye's qualifications with respect to the business of advertising production cost management consulting are somewhat greater, his testimony is excludable because it relies on unrealistic speculations and because it is likely to confuse and mislead jury. Expert testimony should be excluded "if it is speculative or conjectural" or "if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith.'" *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quotation omitted); see also *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 681-82 (3d Cir. 1991) (excluding opinion of prospective profits based on predicted sale rather than available data on actual performance). In the context [*8] of lost future earnings, "an

expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Boucher, 73 F.3d at 21* (citation omitted).

Mr. Kaye's report containing his opinion of the profitability of Mr. Slaven's advertising production cost management consulting business states:

> In this lawsuit Mr. Slaven is claiming that he relinquished his 50% interest in a partnership with Donald O'Mara for reasons of health caused by this accident. I have reviewed a list of clients that John Slaven and Donald O'Mara pursued and made presentations to and those that Mr. O'Mara ultimately obtained as clients after Mr. Slaven had to withdraw. I also reviewed the fees payable by those clients.
>
> The clients for which Mr. O'Mara is working and, to which presentations were made, include Cheesebrough-Ponds, Lever Brothers, Lipton and Van Den Bergh Foods. The aggregate fees for these clients are $ 365,000 per year.
>
> Based on my experience in the industry with two partners actively involved in the business and one auditor supporting them I would expect that the partners would be able to take approximately $ 140,000 [*9] to $ 150,000 each out of the business. This is based on an auditor's salary of $ 30,000 and non-payroll expenses approximately 13% of income.

The proposed testimony is entirely speculative and totally lacking in factual basis. First, it relies on the assumption that Mr. Slaven's business would get the business obtained by Mr. O'Mara but does not consider what the actual profitability of that business is. Next it makes the patently absurd suggestion that a business with aggregate fees of $ 365,00 would generate profit to the partners of $ 300,000.

Given the fact that Mr. Kaye states in his report that his own company's profits average 15-25% per year and that its non-payroll expenses are approximately 17% of total costs of doing business, there is no basis for his opinion that Mr. Slaven's profits would exceed 75% and its non-payroll expenses would be only 13% of income. Clearly, such proposed testimony is highly unreliable, and therefore excludable under *Rule 703 of the Federal Rules of Evidence.* See *Boucher, 73 F.3d at 22;* see also *Gumbs v. Int'l Harvester, Inc, 718 F.2d 88, 98 (3d Cir. 1983).*

The lack of support for the opinions expressed not only undermines the validity [*10] of the opinions, but also evidences the fact that Mr. Kaye, a lawyer with no accounting background, totally lacks the qualifications to testify as an expert on the matters set forth in his report.

Mr. Kaye's testimony which consists of conclusory assertions without any technical justifications or reasoning, if allowed, would needlessly confuse jury without adding anything of value, and thus is also excludable under *Rule 403 of the Federal Rules of Evidence.* See *Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 208 (2d Cir. 1984).* Therefore, the defendants' motion in limine is granted and Mr. Kaye will not be permitted to testify to the proffered opinions.

### 3. Goldman Motion

In the Goldman motion, defendants Allan H. Goldman and Louisa Little ("Goldman defendants") seek an order granting summary judgment in their favor on the grounds that Mr. Slaven is unable to establish through any material facts that they were negligent, and that they are entitled to be reimbursed by Mee Noodle and Chaj the cost of insurance premiums for the site in question.

Mr. Slaven, seeking to hold the Goldman defendants liable for his injuries, has failed to establish a prima facie case against [*11] them. Generally, an out-of-possession landlord, like the Goldman defendants, may not be held liable for a third party's injuries on his premises unless he has notice of defect or has consented to be responsible for maintenance or repair. *Canela v. Foodway Supermarket, 188 A.D.2d 416, 591 N.Y.S.2d 834 (N.Y. App. Div. 1992); Levy v. Daitz, 196 A.D.2d 454, 601 N.Y.S.2d 294 (N.Y. App. Div. 1993).* However, constructive notice may be found where an out-of-possession landlord reserves a right under the terms of a lease to enter the premises for the purpose of inspection and maintenance or repair and a specific statutory violation exists. *Guzman v. Haven Plaza Hous. Dev. Fund Co., 69 N.Y.2d 559, 566, 516 N.Y.S.2d 451, 509 N.E.2d 51 (1987).* "In such case, only a significant structural or design defect that is contrary to a specific statutory safety provision will support imposition of liability against the landlord." *Velazquez v. Tyler Graphics, Ltd., 214 A.D.2d 489, 625 N.Y.S.2d 537 (N.Y. App. Div. 1995).*

Here, it is undisputed that the Goldman defendants had leased the premises to Chaj and that according to the lease, Chaj was responsible for maintaining where the accident [*12] occurred. Mr. Slaven does not contend that the Goldman defendants had actual notice of the condition that allegedly caused his fall. Instead, Mr. Slaven seeks to hold the Golden defendants liable by arguing that they had constructive notice of the condition.

Case 1:05-cv-01355-JR   Document 22-11   Filed 01/30/2006   Page 4 of 5

Page 4
1998 U.S. Dist. LEXIS 15049, *

For Mr. Slaven to prevail on the constructive notice issue, he must show the existence of "a significant structural or design defect in violation of a specific statute." *King v. Hahn, 993 F. Supp. 212, 215 (S.D.N.Y. 1998)* (citations omitted). Clearly, temporary conditions created by washing the sidewalk using a green cleaning substance cannot be considered a significant structural or design defect. However, Mr. Slaven relies on *Guzman v. Haven Plaza Housing Dev. Fund Co., 69 N.Y.2d 559, 566, 516 N.Y.S.2d 451, 509 N.E.2d 51 (1987)*, and argues that the Goldman defendants had constructive notice because the conditions at issue violated sections 27-127 and 27-128 of the New York City Administrative Code. Mr. Slaven's reliance on Guzman is misplaced, for in that case the landlord breached specific regulations defining the requirements for the equipment at issue in addition to the general regulatory responsibility for safe [*13] maintenance set forth in sections 27-127 and 27-128. In fact, courts have found that the provisions that Mr. Slaven relies on are insufficient to impute constructive notice to landlord. See, e.g., *King, 993 F. Supp. at 216*. Thus, the Goldman defendants did not have constructive notice of the condition in front of Mee Noodle and did not owe a duty to Mr. Slaven.

The Goldman defendants are entitled to be reimbursed by Chaj the cost of insurance premiums for the site in question. It is undisputed that the lease requires the tenant Chaj to procure "a comprehensive policy of general liability insurance in which the Tenant and the Landlord are named insured, for any and all claims arising during the term of this lease . . . for any personal injury . . . in, upon, or about the demised premises," and that Chaj failed to procure liability insurance. Furthermore, the lease entitles the landlord to recover liability insurance premium if the tenant fails to procure one.

Chaj argues that because the accident occurred on the public sidewalk, not on the leased property, it needs not to pay for the insurance premium covering the sidewalk. This argument lacks merit. The lease require Chaj to [*14] obtain liability insurance covering "any personal injury . . . in, upon, or about the demised premises." Clearly, it covers the public sidewalk in front of the leased property. Thus, the Goldman defendants are entitled to recovery the cost of insurance premiums from the premises leased to Chaj as a matter of law.

Because the Goldman defendants exercised their option under the lease to obtain their own insurance, their damages are limited to the cost of such insurance. *Wallen v. Polo Grounds Bar and Grill N.Y., Inc., 198 A.D.2d 19, 20, 603 N.Y.S.2d 132, 134 (N.Y. App. Div. 1993)*. Specifically, the Goldman defendants are entitled to summary judgment against Chaj in the amount of $2,000.

The Goldman defendants also seek to recover the cost of insurance premiums from Mee Noodle. However, the Goldman defendants have not shown why Mee Noodle, which is not a party to the lease at issue, should be held liable for insurance premiums. Consequently, their motion to recover premiums from Mee Noodle is denied.

### 4. St. Claire's Hospital Motion

Defendant St. Clare's Hospital and Health Center ("Hospital") filed a motion to dismiss or in the alternative for summary judgment. The [*15] Hospital contends that: (1) Mr. Slaven's complaint fails to state any claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), *42 U.S.C. § 1395dd;* and (2) Mr. Slaven has failed to raise any genuine issue of material fact that would warrant a trial as to his claim of malpractice. The Hospital's motion is granted.

In response to the Hospital's motion, Mr. Slaven has filed a motion to supplement his January 9, 1998 Memorandum with a January 15, 1998 affidavit by Dr. William Harris, an orthopedic surgeon who treated Mr. Slaven's injuries. The Hospital has not opposed to this motion and filed a reply memorandum addressing issues raised by Dr. Harris's affidavit. Thus, the Court grants Mr. Slaven's motion.

### 4.1. The Emergency Medical Treatment and Active Labor Act

Mr. Slaven's EMTALA claim is based on an allegation that the Hospital discharged Mr. Slaven without first stabilizing his condition in violation of EMTALA. This claim lacks merit.

EMTALA requires that when a hospital "determines that [an] individual has an emergency medical condition," the hospital must provide for such further examination and treatment "as may be required to stabilize the medical [*16] condition." *42 U.S.C. 1395dd(b)(1)*. "On its face, this provision takes the actual diagnosis as a given, only obligating hospitals to stabilize conditions that they actually detect." *Vickers v. Nash General Hosp., Inc., 78 F.3d 139, 145 (4th Cir. 1996)* (citations omitted). "The Act does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware." Id. (citation omitted).

Mr. Slaven's claim misconstrues the nature of the stabilization requirement. It alleges that the Hospital failed to detect a fracture in his left hip and discharged him without stabilizing the fracture in violation of EMTALA. However, as stated above, the EMTALA is only concerned about stabilizing conditions that are actually detected. It is undisputed neither Dr. John B. Brennan, a physician who treated Mr. Slaven in the Hospital's

emergency room, nor a radiologist who examined Mr. Slaven's x-rays found any fracture. Mr. Slaven has provided no evidence showing that the treatment that he received at the Hospital did not "stabilize" the conditions actually discovered on that date. Thus, Mr. Slaven has failed to state [*17] a claim under EMTALA.

Instead, Mr. Slaven's claim relates to the condition which was later found--a possible fracture in the left femur around the femoral component--, and alleges that the Hospital failed to take adequate steps to stabilize that condition. "Analysis by hindsight," however, "is not sufficient to impose liability under EMTALA." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 883 (4th Cir. 1992). Moreover, if Mr. Slaven is complaining of misdiagnosis by either Dr. Brennan or the radiologist, he must bring a claim under state tort law, not under EMTALA. See *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214 (W.D.N.Y. 1994).

Accordingly, the Hospital's motion to dismiss Mr. Slaven's claims based on EMTALA is granted.

### 4.1. Medical Malpractice Claims

Mr. Slaven contends that he suffered damages due to the failure of the Hospital to diagnose a fracture of his femur on August 1, 1994. However, the record does not support this contention.

Under New York law, a physician is not liable absent any proof that the medical care at issue "in any way delayed the [patient's] treatment or contributed to the damages alleged to have resulted thereafter." *Cocomello v. Columbia* [*18] *Presbyterian Med. Center*, 120 A.D.2d 357, 358, 502 N.Y.S.2d 9, 10 (N.Y. App. Div. 1986). Here, there is no showing that the alleged failure to discover a fracture was a proximate cause of the injury of which Mr. Slaven complains. It is undisputed that Dr. Brennan instructed Mr. Slaven to follow with his orthopedist for further assessment and gave him crutches. Mr. Slaven provided no evidence showing that the treatment would have been different, had Dr. Brennan detected a fracture. In fact, Dr. Peter N. Carbonara, an orthopedist who saw Mr. Slaven one week after the accident, did not alter treatment even after he found a fracture of the proximal femoral shaft around the femoral prosthesis. He merely advised Mr. Slaven to use crutches. By August 24, 1994, x-rays showed evidence of bone healing of the fracture. Nor did Dr. Harris, who diagnosed that "[Mr. Slaven] might have a transverse fracture in the submetaphyseal area," did not change a course of treatment. In addition, Mr. Slaven has provided no expert medical opinion showing that the alleged misdiagnosis resulted in additional injuries. Thus, the medical malpractice claim lacks merit.

### 5. Conclusion

The motion for [*19] summary judgement filed by Mee Noodle and Chaj is denied. The motion in limine for an order to exclude testimony of Mr. Kaye is granted. The motion by the Goldman defendants is granted in part and denied in part--the complaint is dismissed as to the Goldman defendants and the Goldman defendants' motion to recover insurance premiums is granted against Chaj in the amount of $ 2,000, but not against Mee Noodle. Mr. Slaven's motion to supplement his January 9, 1998 memorandum is granted. The Hospital's motion for summary judgment is granted and the complaint is dismissed as to the Hospital.

**SO ORDERED.**

Dated: New York, New York

September 24, 1998

JOHN S. MARTIN, JR., U.S.D.J.